### Mary FOGAL and Robert Fogal, Appellants,

v.

### STATURE CONSTRUCTION, INC., Jorge Casimiro, Tom Thibodeau and Bernie Kane, Appellees.

#### No. 01–07–00456–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 18, 2009.

711

Andrew Sher, The Sher Law Firm, P.L.L.C., Kenneth Robert Jones, Law Offices of Kenneth R. Jones, L.L.P., Houston, TX, for Appellants.

Jerry L. Elmore, William S. Chesney III, William L. Van Fleet, Frank, Elmore, Lievens, Chesney & Turet, L.L.P., Houston, TX, for Appellees.

Panel consists of Justices KEYES, ALCALA, and TAFT.[1]

## OPINION

ELSA ALCALA, Justice.

Appellants, Mary Fogal and Robert Fogal, and appellees, Stature Construction, Inc., Jorge Casimiro, Tom Thibodeau, and Bernie Kane (collectively "Stature"), filed motions for rehearing. We requested from the Fogals a response to Stature's motion, and the Fogals responded. We grant rehearing and withdraw our opinion and judgment issued on January 29, 2009.

This is an appeal following the trial court's final judgment confirming an arbitration award. The judgment orders Stature to pay the Fogals $37,308.40 and post-judgment interest. In five issues, the Fogals challenge the trial court's decision to send the parties to arbitration, and alternatively, the trial court's decision to confirm the arbitrator's award. In its sole counter-issue, Stature asserts the trial court impermissibly modified the arbitration award by adding post-judgment interest. We conclude the trial court properly sent the case to arbitration and confirmed the award, but the trial court improperly modified the arbitrator's award by adding

---

1. Justice Tim Taft, who retired from the First Court of Appeals on June 1, 2009, continues to sit by assignment for the disposition of this case, which was submitted on December 9, 2008.

post-judgment interest. We modify the trial court's judgment to exclude the award of post-judgment interest, and affirm as modified.

## Background

The Fogals purchased a new-construction townhome by entering into an earnest money contract, which contained an agreement to arbitrate disputes. In pertinent part, the arbitration clause stated,

18. MEDIATION AND BINDING ARBITRATION:

Any controversy or claim whether such claim sounds in contract, tort, or otherwise, arising out of or relating to (i) this Agreement, (ii) any branch of the Agreement, (iii) the subject matter of the Agreement, (iv) the commercial or economic relationship of the parties to the Agreement, (v) any representations or warranties, express or implied, relating to the Agreement, (vi) any violations of any statute relating to the Agreement or the subject matter of the Agreement, and/or (vii) any related agreements between the parties to the Agreement ("the disputes") shall be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association ("AAA") and the Federal Arbitration Act (Title 9 of the United States Code), and Judgement upon the award rendered by the arbitrator(s) may be confirmed, entered, and enforced in any court having jurisdiction.

The earnest-money contract identified "Robert and Mary J. Fogal" as "Buyer" and "Tremont Homes" as "Seller."

The Fogals soon discovered a roof leak and requested that Stature make repairs, but Stature refused. The leak eventually caused mold to grow in the home. Facing impending litigation over the costs for the repairs, Stature filed for an American Arbitration Association (AAA) proceeding against the Fogals seeking declaratory judgment that Stature was not responsible for damages to the Fogals' home. However, the arbitrator terminated the arbitration proceeding when Stature failed to pay the required deposits. According to Stature, the declaratory judgment was no longer needed after the house was foreclosed, so it opted not to pay the fees to continue the arbitration.

The Fogals eventually learned that Stature had failed to disclose construction defects in the roofing that were known to Stature prior to sale. The Fogals then filed suit against Stature, alleging statutory and common-law fraud, and violations of the Texas Deceptive Trade Practices Act (DTPA).

Stature moved to compel arbitration. The Fogals objected to the motion to compel arbitration by asserting the same issues that are presented in this appeal. The Fogals asserted that the arbitration agreement was procedurally and substantively unconscionable due to the inconspicuous print. The Fogals also claimed that Stature could not enforce the arbitration agreement because that agreement was between the Fogals and Tremont Homes, which was not an assumed name of Stature. The Fogals further contended that Stature waived its right to demand arbitration by previously demanding then failing to pursue the earlier-filed arbitration proceeding. Stature responded to the Fogals' objections to its motion to compel arbitration by claiming it had the right to enforce the arbitration clause in the earnest-money contract between the Fogals and Tremont Homes, even though the contract contained no reference to either Stature or Tremont Custom Homes. First, Stature presented other documents related to the sale of the house purchased by the Fogals to show that Stature, rather than

Tremont Homes, was the seller of the house. The settlement statement from the closing of the house purchase and the Special Warranty Deed conveying the house to the Fogals identified Stature as the seller of the house. Thus, Stature presented other documents related to the sale of the house that showed it was the seller of the house rather than Tremont Homes, which was shown as the seller on the earnest-money contract.

Second, Stature presented evidence to show that Stature did business under the name "Tremont Custom Homes," and that the earnest money contract's reference to "Tremont Homes" was a scrivener's error in that the seller should have been shown as Tremont Custom Homes. Jorge Casimiro, Stature's president, stated, "During this time period, Stature conducted business under three assumed names: Simon Homes, Stature Homes and Tremont Custom Homes." Thomas Thibodeau, another Stature officer, also testified. Thibodeau was asked, "What was Tremont Homes at the time [the Contract] was executed in February 2004?" Thibodeau responded, "Well. As I mentioned, it should have been Tremont Custom Homes. And that was a marketing name for Stature Construction, Inc." Stature, therefore, presented evidence that the contract's reference to Tremont Homes should have been Tremont Custom Homes, which was a marketing name used by Stature. After the Fogals bought their house, Stature filed an assumed name certificate for Tremont Custom Homes, but not for Tremont Homes.

After a hearing, the trial court granted the order to compel arbitration and the case was litigated before an arbitrator. The arbitrator held a three-day hearing, which was transcribed at the request of the Fogals. The Fogals called six witnesses and offered 17 exhibits, 16 of which were admitted into evidence. Stature rested without presenting witnesses or introducing any evidence.

The arbitrator found that the Fogals breached the earnest money contract by filing suit in district court, and awarded Stature $14,597.50 in attorney's fees plus $146.10 in expenses. The arbitrator granted the Fogals' common-law fraud claim, awarding the Fogals $40,832 in damages while denying recovery for medical expenses and exemplary damages. The arbitrator denied the Fogals' claims for statutory fraud, for damages under the DTPA, for costs and attorney's fees under the Texas Residential Construction & Liability Act (RCLA), and for a declaration that Jorge Casimiro and Tom Thibodeau were alter egos of Stature Construction, Inc. The arbitrator charged Stature with all fees and expenses of the American Arbitration Association (AAA) as well as compensation of the arbitrator, ordering Stature to reimburse the Fogals $11,220. The net result of the arbitrator's award was $37,308.40 for the Fogals. Concerning the common-law fraud claim, the arbitrator found:

> This Arbitrator does grant the Common Law Fraud claim. There was sufficient evidence of Stature Construction, Inc.'s involvement in ongoing litigation regarding a defective roofing system on the Fogals' home. Although Stature claims there were substantial repairs and replacement on this "new" home, there was evidence Stature was still completing repairs just a few weeks before closing. The nondisclosure of material fact(s) element was satisfied along with the other required elements. Further, once the Fogals made their initial complaints about leaks in their home, Stature should have handled such complaints immediately in light of the undisclosed prior leaks and problems with the

home. The lack of diligence by Stature was considered when evaluating the calculation of damages.

After the arbitrator issued its award, the Fogals filed a "Motion to Vacate Arbitration Award, Motion for New Trial and Alternatively, Plaintiffs' Motion to Modify and Enter Arbitration Award." In the motion, the Fogals asserted the same issues that are presented in this appeal. The Fogals challenged the trial court's decision to confirm the arbitrator's award by asserting that the arbitrator should have referred the case back to the trial court when the arbitrator found that the entire agreement was obtained by fraud because that finding necessarily made the arbitration clause an agreement obtained by fraud. The Fogals also contended that the arbitrator conducted the hearing so as to substantially prejudice the Fogals' rights by excluding certain evidence and by the sequence of the evidence presented. The Fogals further contended that enforcement of the arbitration clause violated the open courts and due process provisions in the constitution. Alternatively, the Fogals claimed they should not have to pay Stature's attorney's fees or any costs of the arbitration, and the Fogals should be awarded pre- and post-judgment interest. The trial court affirmed the arbitrator's award, adding post-judgment interest.

### The Trial Court's Order Compelling the Parties to Arbitrate

The Fogals assert the trial court erred by compelling the parties to arbitrate. In three issues that challenge the trial court's decision to send the parties to arbitration, the Fogals assert Stature cannot enforce the arbitration clause in the earnest money contract because the arbitration clause was procedurally unconscionable due to inconspicuous print; Stature, a nonsignatory, did not file an assumed name certificate

for Tremont Homes, which was the entity that entered the arbitration clause with the Fogals; and Stature waived its right to demand arbitration by abandoning a previously filed arbitration proceeding.

### A. Standard of Review

■ "Whether an arbitration agreement is enforceable is subject to de novo review." *In re Labatt Food Serv., L.P.,* 279 S.W.3d 640, 643 (Tex.2009). The parties do not dispute that the arbitration agreement is governed by the FAA. *See* 9 U.S.C.S. §§ 1–307 (LexisNexis 2008). Under the FAA, a party to a contract containing an arbitration agreement may challenge the arbitration agreement itself on "grounds as exist at law or in equity for revocation of any contract." 9 U.S.C.S. § 2; *see also In re Poly–America, L.P.,* 262 S.W.3d 337, 347 (Tex.2008) (citing *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995)) ("In determining the validity of an agreement to arbitrate under the FAA, courts must first apply state law governing contract formation."). "[O]rdinary principles of state contract law determine whether there is a valid agreement to arbitrate." *In re Kellogg Brown & Root,* 166 S.W.3d 732, 738 (Tex.2005); *see also Labatt,* 279 S.W.3d at 643.

### B. Procedural Unconscionability Due to Inconspicuous Print

In their second issue, the Fogals assert that "the trial court erred in compelling arbitration where the agreement to arbitrate was unconscionable and inconspicuous." The Fogals contend that the clause is procedurally unconscionable under the public policy of Texas, as now codified in Texas Property Code section 420.003.

■ If an agreement to arbitrate exists encompassing the claims in question, and the party opposing arbitration has failed to prove its defenses, then a trial

court has no discretion; its only option is to compel arbitration. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753–54 (Tex. 2001). In the context of enforcement of an arbitration agreement, defenses refer to unconscionability, duress, fraudulent inducement, and revocation. *Id.* at 756. Procedural unconscionability refers to the fairness of the circumstances surrounding adoption of the arbitration clause. *See In re Luna*, 175 S.W.3d 315, 319 (Tex.App.-Houston [1st Dist.] 2004, orig. proceeding).

■ Texas Property Code section 420.003 provides that after September 1, 2007 an arbitration clause in a new-home contract must "be conspicuously printed or typed in a size equal to at least 10–point bold type or the computer equivalent." *See* TEX. PROP.CODE ANN. § 420.003 (Vernon Supp. 2008). The legislative note to the statute states that "this Act applies only to [new homes that are required to be registered under the comprehensive act] that are filed on or after September 1, 2007." *See id.* The public policy of Texas, therefore, is to now require the conspicuous printing. *See Fairfield Ins. Co. v. Stephens Martin Paving, L.P.*, 246 S.W.3d 653, 665 (Tex.2008) ("The legislature determines public policy through the statutes it passes."). Because the Fogals' agreement was signed prior to 2007, section 420.003 does not apply to this agreement. *See* TEX. PROP.CODE ANN. § 420.003. We hold the Fogals' agreement does not violate the policy as stated in section 420.003 because that section does not apply to this agreement due to the effective date of the section. *See id.*

■ To the extent that the Fogals are asserting a policy argument concerning the conspicuousness of the print other than as codified in section 420.003, we conclude the argument is waived due to inadequate briefing. *See* TEX.R.APP. P. 38.1(h). In their brief, the Fogals state that the cur-

rent font requirements were the preexisting policy of Texas, but they provide no authority to support the statement, nor do they provide anything but a conclusory assertion that this must have been the policy then because it is now the codified law. Moreover, the Fogals suggest that this arbitration agreement is inconspicuous, but they do not explain how it was inconspicuous and how it would have violated any then applicable policy. We hold the Fogals have waived any policy complaint outside Property Code section 420.003. *See* TEX. PROP.CODE ANN. § 420.003.

We overrule the second issue.

## C. Stature as Non–Signatory to Agreement Signed by Tremont Homes

In their first issue, the Fogals state, "The District Court erred in compelling arbitration where no valid assumed name certificate was on file for the entity named in the agreement containing the arbitration clause." In their reply brief, the Fogals clarify this position by stating that "arbitration, if any, can only be compelled by the party signing the agreement and not by Appellee Stature."

### 1. Enforcement by Non–Signatory

■ "Because arbitration is contractual in nature, the FAA generally 'does not require parties to arbitrate when they have not agreed to do so.'" *Kellogg Brown & Root*, 166 S.W.3d at 738. Federal and Texas state courts have recognized, however, that "'[i]t does not follow ... that under the [FAA] an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision'; instead, under certain circumstances, principles of contract law and agency may bind a non-signatory to an arbitration agreement." *Id.*

Here, at first blush, Stature appears to be a non-signatory to the agreement because the agreement that contained the arbitration clause was signed by the Fogals and Tremont Homes. However, the evidence shows Stature was doing business under the name "Tremont Custom Homes," which was the entity that should have been listed on the earnest-money contract that referred to Tremont Homes. Moreover, the deed for the house purchased by the Fogals shows that Stature was the seller of the townhouse referred to in the earnest-money contract. The Fogals do not dispute that Stature was the seller of the townhouse, that Stature was doing business as Tremont Custom Homes, or that Thibodeau said the reference to Tremont Homes in the earnest-money contract was meant to reference Tremont Custom Homes. Instead, the Fogals assert that Stature could not compel the arbitration because it did not file an assumed name certificate for Tremont Homes.

## 2. The Lack of an Assumed Name Certificate

■ According to the Fogals, Stature later filed an assumed name certificate stating it was doing business as "Tremont Custom Homes," but it has not filed an assumed name certificate for "Tremont Homes." However, the failure to file an assumed name certificate does not invalidate the agreement to arbitrate.

■ Under the Assumed Business or Professional Name Act,

Any corporation, limited partnership, registered limited liability partnership, or limited liability company which regularly conducts business or renders professional services in this state under an assumed name, or which may be required by law to use an assumed name in this state to conduct such business or render such services, shall file in the office of the Secretary of State ... a certificate setting forth:

(1) the assumed name under which such business or professional service is or is to be conducted or rendered....

TEX. BUS. & COMM.CODE ANN. § 36.11(a) (Vernon 2002). But failure to register an assumed name does not impair the validity of any contract, according to the Texas Business and Commerce Code section 36.25, which states:

Failure to comply with the provisions of this chapter by any person shall not impair the validity of any contract or act by such person nor prevent such person from defending any action or proceeding in any court of this state, but such person shall not maintain an action or proceeding in any court of this state arising out of a contract or act in which an assumed name was used until an original, new, or renewed assumed business or professional name certificate has been filed as required by this chapter. In an action or proceeding brought against a person that has not complied with this chapter, the plaintiff or other party bringing the suit or proceeding may recover, if the court shall so determine, expenses incurred, including attorney's fees, in location and effecting service of process on such person.

TEX. BUS. & COMM.CODE ANN. § 36.25 (Vernon 2002). The plain language of this statute makes clear that an entity's failure to comply with the statute does not affect the entity's capacity to defend a suit. *See Sixth RMA Partners, L.P. v. Sibley,* 111 S.W.3d 46, 55 (Tex.2003). Moreover, the plain language of the statute plainly states that the failure to file the assumed name certificate "shall not impair the validity of any contract." TEX. BUS. & COMM.CODE ANN. § 36.25. Under the Business and Commerce Code, therefore, the failure of Stat-

ure to file an assumed name certificate for Tremont Homes does not invalidate the agreement, and could not be a basis for finding the arbitration clause unenforceable. *See* TEX. BUS. & COMM.CODE ANN. § 36.25.

We overrule the Fogals' first issue.

### D. Waiver of Arbitration by Invocation of Litigation

In their fifth issue, the Fogals assert that Stature waived its right to demand arbitration when it filed and later abandoned the original arbitration proceedings.

■■■■ "[A] party waives an arbitration clause by substantially invoking the judicial process to the other party's detriment." *Perry Homes v. Cull,* 258 S.W.3d 580, 589–90 (Tex.2008). Waiver is a legal question for the court based on the totality of the circumstances, and asks whether a party has substantially invoked the judicial process to an opponent's detriment, the latter term meaning inherent unfairness caused by "a party's attempt to have it both ways by switching between litigation and arbitration to its own advantage." *Id.* at 597; *see also In re Bruce Terminix Co.,* 988 S.W.2d 702, 704 (Tex.1998).

■■■ Stature never invoked litigation through the judicial process. Stature demanded arbitration, then failed to pay the arbitration fee, resulting in the dismissal of the arbitration. After that, the Fogals filed suit. Stature responded by filing a motion to compel arbitration. Thus, Stature has never sought to invoke the litigation process. Instead, it has only sought arbitration for resolution of the disputes between it and the Fogals. Stature has not attempted to "have it both ways by switching between litigation and arbitration." *See Perry Homes,* 258 S.W.3d at 597. We hold Stature did not waive its

right to demand arbitration by previously demanding arbitration.

We overrule the Fogals' fifth issue.

### Trial Court's Denial of Motion to Vacate Award

In their third issue, the Fogals assert "the trial court erred in failing to modify or vacate the arbitration award because the arbitrator found the entire agreement was procured by fraud." Although the Fogals mention modification of the award in their statement of this issue, what they seek as a remedy is the trial court's vacation of the entire award. Moreover, although the caption of the issue relates only to the finding by the arbitrator that the earnest-money contract was obtained by fraud, within this issue are subissues discussing related reasons why the trial court should have vacated the award.

### A. Standard of Review

■■■ The court of appeals reviews de novo a trial court's decision to confirm or vacate an arbitration award under the FAA. *Myer v. Americo Life, Inc.,* 232 S.W.3d 401, 407 (Tex.App.-Dallas 2007, no pet.). A district court may vacate an award under the FAA only if (1) the award was procured by fraud, corruption, or undue means; (2) there was evidence of partiality or corruption among the arbitrators; (3) the arbitrators were guilty of misconduct that prejudiced the rights of a party; or (4) the arbitrators exceeded their powers. 9 U.S.C.S. § 10(a).

### B. Arbitrator's Finding that Entire Contract Was Procured by Fraud

As part of their third issue, the Fogals contend the entire agreement is void, including the arbitration clause, since the arbitrator found the agreement was fraudulently obtained. The Fogals contend that, although the issue of fraudulent inducement of the entire agreement must go

to the arbitrator, once the arbitrator determines the entire agreement was obtained by fraud, that finding "vitiates *all* obligations contained in an agreement," including the arbitration clause. The Fogals assert that "the rule of severability rests 'on the *assumption* that there is an underlying agreement.'" The Fogals contend that once the arbitrator finds the agreement is obtained by fraud, the rule of severability no longer applies, and the finding by the arbitrator that the entire agreement was obtained by fraud requires the arbitrator to determine that the arbitration clause is also obtained by fraud. At that point, the Fogals contend the arbitrator should cease the arbitration hearing and require the entire case be sent to the trial court for litigation. The Fogals do not cite to any authority to support their position.

Stature responds that an agreement to arbitrate is treated as an entirely different contract between the parties, even if the arbitration clause is subsumed within a larger contract. Stature explains that unless a party can prove that the specific arbitration clause itself was procured by fraud, as opposed to the entire agreement which contains the arbitration clause, the arbitration agreement is valid and all disputes encompassed by its terms must be arbitrated.

■■■ The defense of fraudulent inducement "must specifically relate to the Arbitration Addendum itself, not the contract as a whole, if [it is] to defeat arbitration. Defenses that pertain to the entire installment contract can be arbitrated." *FirstMerit Bank*, 52 S.W.3d at 756. "[W]hile fraud in the inducement of an arbitration agreement is a defense to arbitration, whether the sellers made any misrepresentations in the inducement of the underlying contract relates to the contract's validity and can be arbitrated." *Id.*

at 755. Though the Fogals correctly note that a contract induced by fraud is no contract at all because it lacks agreement of the parties, *see Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 178 (Tex.1997), this does not affect arbitrability of the dispute. *See Will–Drill Resources, Inc. v. Samson Resources Co.*, 352 F.3d 211, 219 (5th Cir.2003). As the Fifth Circuit explained,

> [T]he separability doctrine rests on the assumption that there is an underlying agreement. That one of the parties later disputes the enforceability of that *agreement* does not change the fact that at some point in time, the parties reached an agreement, and that agreement included the decision to arbitrate disputes arising out the agreement. The existence of this agreement provides the arbitrator with the authority required to decide whether the agreement will continue to exist. Even if the arbitrator concludes that the agreement was void, and the parties are returned to their pre-agreement positions *as if* the agreement never existed, the agreement existed long enough to give the arbitrator the power to decide the dispute.

*Id.* at 218–19.

■■■ We conclude the determination by the arbitrator that Stature committed common-law fraud does not establish that the arbitration clause was obtained by fraud because the arbitration clause is severed from the entire agreement. *See id.* Moreover, the procedure for challenging whether an arbitration agreement was obtained by fraud is to be held before the trial court, when the trial court is determining whether to compel arbitration. *See First Options*, 514 U.S. at 943, 115 S.Ct. at 1924. After the trial court orders the case to be sent to arbitration, the arbitrator is not determining the effectiveness of the arbitration agreement but rather the re-

maining part of the contract that is severed from the arbitration agreement. *Labatt*, 279 S.W.3d at 647–49. In *Labatt*, the Supreme Court of Texas said,

> There are two types of challenges to an arbitration provision: (1) a specific challenge to the validity of the arbitration agreement or clause, and (2) a broader challenge to the entire contract, either on a ground that directly affects the entire agreement, or on the ground that one of the contract's provisions is illegal and renders the whole contract invalid. A court may determine the first type of challenge, but a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator.
>
> The beneficiaries challenge the arbitration clause only in the sense that they also challenge all parts of the agreement because the parts comprise the whole. But, unless a challenge is to the arbitration clause or arbitration agreement itself, as it was in *In re Poly–America*, the question of a contract's validity is for the arbitrator and not the courts. Accordingly, the beneficiaries' challenge to the validity of the agreement must be determined by the arbitrator, and we do not address it.

*Id.* (internal citations omitted). The arbitrator does not revisit the trial court's determination about the effectiveness of the arbitration clause. *See First Options*, 514 U.S. at 943, 115 S.Ct. at 1924. We hold the trial court did not err by refusing to vacate the arbitrator's award based on the arbitrator's finding that Stature committed common-law fraud under the contract.

### C. Violation of Open Courts

 Also within their third issue, the Fogals assert that they are "entitled to have the award partially or totally vacated on public policy grounds" because "this State has a long history of avoiding the obligations of contracts found to be fraudulent or illegal." Violation of public policy is no longer a legally recognized ground for vacating an arbitration award. *Allstyle Coil Co., L.P. v. Carreon*, 295 S.W.3d 42, 44 (Tex.App.-Houston [1st Dist.] 2009, no pet. h.). Moreover, the Fogals present no evidence that the arbitration clause was fraudulently obtained; their sole evidence of fraud concerned the agreement as a whole, which was severed from the arbitration clause. *See Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 (Tex.2008) ("While an arbitration agreement procured by fraud is unenforceable, the party opposing arbitration must show that the fraud relates to the arbitration provision specifically, not to the broader contract in which it appears.").

### D. Challenges to Arbitrator's Evidentiary Hearing on the Merits

As part of their third issue, the Fogals assert the arbitrator substantially prejudiced the Fogals' rights by refusing to hear the claims of fraudulent inducement separate from all other claims. The Fogals state, "By denying [the Fogals] an opportunity to be heard initially on the issues of fraud and fraudulent inducement and by ordering [the Fogals] to present all of their claims together, the arbitrator conducted the hearing in a manner which substantially prejudiced [the Fogals'] rights."

 The FAA provides as a ground for vacating an award that the "arbitrators refus[ed] to hear evidence pertinent and material to the controversy." 9 U.S.C.S. § 10(a)(3). An arbitrator is not bound to hear all the evidence tendered by the parties as long as each party is given an adequate opportunity to present evidence and arguments. *Babcock & Wilcox Co. v. PMAC, Ltd.*, 863 S.W.2d 225, 234 (Tex.

App.-Houston [14th Dist.] 1993, writ denied) (applying FAA). Although they contend the arbitrator erred by not listening to the evidence in the *sequence* they wanted the evidence heard, that complaint fails to assert that the arbitrator refused to hear evidence. We cannot vacate or modify an arbitrator's award merely because the arbitrator refused to hear the fraud claims separate from the other claims. *See id.*

In a footnote within the third issue, the Fogals contend the arbitrator refused to hear evidence of damage to credit reputation as an element of the fraud claim. The Fogals assert that this "refusal alone is grounds to vacate the award." The record shows that the arbitrator held a three-day hearing, at which the Fogals called six witnesses and admitted 16 exhibits. Although the arbitrator limited the post-foreclosure evidence, the Fogals were given an adequate opportunity to present evidence and arguments. *See id.* The arbitrator's award cannot be invalidated merely because the arbitrator indicated a desire not to admit post-foreclosure evidence. *See id.* Because the Fogals have not shown that the arbitrator failed to give them an opportunity to present evidence and arguments, the trial court did not err by refusing to vacate the award. *See id.*

We overrule the third issue.

### Trial Court's Modification of Arbitrator's Award

In their fourth issue, the Fogals alternatively assert that the judgment should be modified by striking the award of attorney's fees to Stature, charging Stature with the costs in the bill of costs and for the court reporter, and adding an award for pre-judgment interest to the Fogals. In its sole counter-issue, Stature asserts the trial court impermissibly modified the arbitration award by adding post-judgment interest.

Texas law favors arbitration. *IPCO—G. & C. Joint Venture v. A.B. Chance Co.*, 65 S.W.3d 252, 255 (Tex.App.-Houston [1st Dist.] 2001, pet. denied). Because arbitration is favored as a means of dispute resolution, courts indulge every reasonable presumption in favor of upholding the award. *Id.* at 256. An arbitration award has the same effect as a judgment of a court of last resort, and a court reviewing the award may not substitute its judgment for the arbitrator's merely because the court would have reached a different decision. *Id.* A mistake of fact or law is insufficient to set aside an arbitration award. *Id.* In the absence of a statutory or common-law ground to vacate or to modify an arbitration award, a reviewing court lacks jurisdiction to review other complaints. *Id.*

In pertinent part, the FAA allows an arbitration award to be modified in the event (1) the award has an evident material miscalculation or material mistake; or (2) the form of the award is imperfect in a way that does not affect the merits. 9 U.S.C.S. § 11. "These grounds speak to errors that are clerical in nature rather than legal." *Quinn v. Nafta Traders, Inc.*, 257 S.W.3d 795, 798 (Tex.App.-Dallas 2008). The Fifth Circuit has defined "evident material miscalculation or material mistake":

> "[W]here the record that was before the arbitrator demonstrates an unambiguous and undisputed mistake of fact and the record demonstrates strong reliance on that mistake by the arbitrator in making his award, it can fairly be said that the arbitrator 'exceeded [his] powers....'" We interpret the term "undisputed" to mean we should look to see whether there is any rational basis for disputing the truth of the fact.

*McIlroy v. PaineWebber, Inc.,* 989 F.2d 817, 821 (5th Cir.1993) (internal citation omitted); *see also Valentine Sugars, Inc. v. Donau Corp.,* 981 F.2d 210, 214 (5th Cir.1993); *Ehrich v. A.G. Edwards & Sons, Inc.,* 675 F.Supp. 559, 565–66 (D.S.D. 1987) (finding calculation of interest based on wrong number of months to be "evident miscalculation of figures"). "One federal court of appeals has indicated that a miscalculation of figures is 'evident' only if it appears on the face of the arbitration award itself." *McGrath v. FSI Holdings, Inc.,* 246 S.W.3d 796, 813 (Tex.App.-Dallas 2008, pet. denied) (citing *Apex Plumbing Supply, Inc. v. U.S. Supply Co.,* 142 F.3d 188, 194 (4th Cir.1998)). An award is imperfect in a matter of form not affecting the merits of the controversy when the parties have a stipulation or agreement that the arbitrator's award fails to take into account. *See Lummus Global Amazonas, S.A. v. Aguaytia Energy del Peru, S.R. LTDA,* 256 F.Supp.2d 594, 634–36 (S.D.Tex.2002); *see also Atl. Aviation, Inc. v. EBM Group, Inc.,* 11 F.3d 1276, 1283–84 (5th Cir.1994).

▬▬▬ The Fogals contend the arbitrator improperly (1) awarded Stature attorney's fees as damages, (2) failed to include the amount for their bill of costs and for the court reporter in those costs that Stature must pay; and (3) failed to include pre-judgment interest in the award. The arbitrator's award included attorney's fees as the damages caused by the Fogals' breach of the arbitration agreement. Moreover, the Fogals admit they never submitted their Bill of Costs to the arbitrator, though all expenses were incurred prior to issuance of the arbitrator's award. These rulings and the refusal to award pre-judgment interest are not evident material miscalculations or material mistakes, are based on issues submitted to the arbitrator, and do affect the merits of the award. *See* 9 U.S.C.S. § 11. Therefore,

we must uphold the arbitrator's award on these issues. *See Babcock,* 863 S.W.2d at 234–35 (holding arbitrator's calculation of damages was within arbitrator's discretion, not material miscalculation); *AIG Baker Sterling Heights, L.L.C. v. Am. Multi-Cinema, Inc.,* 508 F.3d 995, 999–1001 (11th Cir.2007) (holding no material mistake or miscalculation when award did not compensate for payments never submitted to arbitrator); *McGrath,* 246 S.W.3d at 813 (holding trial court properly refused to modify arbitrator's award by adding attorney's fees because no evidence of material miscalculation).

▬▬▬ In response to the Fogals' assertions, we note that the Fogals are not entitled to pre-judgment interest under any applicable Texas statute. The FAA does not address pre- and post-judgment interest on an arbitrator's award, so the Fogals are not entitled to pre-judgment interest under the FAA. *See* 9 U.S.C.S. §§ 1–307. Nor are the Fogals entitled to pre-judgment interest under the Texas Finance Code. The Texas Finance Code provides that monetary judgments for property damage earn pre-judgment interest, but that provision applies only to judgments rendered by courts, not to awards rendered by arbitrators. *See* TEX. FIN. CODE ANN. § 304.102 (Vernon 2006); *Blumberg v. Bergh,* No. 02–04–00138–CV, 2005 WL 1047592, at *6 (Tex.App.-Fort Worth May 5, 2005, no pet.) (mem. op.) ("Arbitrators are not courts."); *see also Nuno v. Pulido,* 946 S.W.2d 448, 452 (Tex. App.-Corpus Christi 1997, no writ).

We conclude the trial court did not err by failing to modify the arbitrator's award to add pre-judgment interest. We overrule the Fogals' fourth issue.

On cross-appeal, Stature contends the trial court erred by modifying the arbitrator's award to add post-judgment interest.

We agree. Because the Fogals have not shown that the arbitrator made a mistake or material miscalculation in refusing to award post-judgment interest, the trial court erred by adding post-judgment interest to the award. *See Kosty v. S. Shore Harbour Comm. Ass'n,* 226 S.W.3d 459, 465 (Tex.App.-Houston [1st Dist.] 2006, pet. denied) (holding trial court erred by adding attorney's fees to the arbitrator's award); *Pulido,* 946 S.W.2d at 451–52 (holding trial court erred by adding pre-judgment interest to arbitrator's award); *Blumberg,* 2005 WL 1047592, at *6 (holding trial court erred by adding post-arbitration interest to arbitration award). We sustain Stature's sole issue and modify the trial court's judgment to exclude the award of post-judgment interest.

## Conclusion

We modify the trial court's judgment to exclude the award of post-judgment interest and affirm as modified.