COURT OF
APPEALS

                                                   EIGHTH DISTRICT OF
TEXAS

                                                              EL
PASO, TEXAS

 


 
 
  
  
 IHS ACQUISITION NO. 171, INC.
 d/b/a MESA HILLS SPECIALTY
 HOSPITAL, ENCORE HEALTHCARE, 
 LLC, and LYRIC HEALTH CARE 
 HOLDINGS III, INC.,
  
                                     Appellants,
  
 v.
  
 JOANN BEATTY-ORTIZ,
  
                                     Appellee.
 
  
 
 
  
 '
    
 '
    
 '
    
 '
    
 '
  
 '
  
 §
  
 §
 
 
  
  
                                    
  
 No.
 08-11-00195-CV
  
                          Appeal from
  
 County Court at Law
 No. 5
  
 of El Paso County,
 Texas
  
 (TC # 2010-4254)
 
 
 
 
  
  
 
 
  
  
 
 
  
  
 
 


                                                                  O
P I N I O N

 

            IHS Acquisition No. 171, Inc. d/b/a Mesa
Hills Specialty Hospital, Encore Healthcare, L.L.C., and Lyric Healthcare
Holdings III, Inc., (collectively Appellants), file this interlocutory appeal
challenging the trial court’s denial of its motion to compel arbitration.  Finding error, we reverse.

FACTUAL SUMMARY

            IHS Acquisitions No. 171, doing
business as Mesa Hills Specialty Hospital, hired Joann Beatty-Ortiz (Beatty) in
May 2000.  On June 30, 2006, Beatty was
promoted to Chief Executive Officer (CEO) where she remained until her
termination on February 3, 2010.  

            On March 31, 2010, Beatty filed a
complaint with the Texas Workforce Commission Civil Rights Division against “IHS
Acquisitions #171 d/b/a Mesa Hills Specialty Hospital” alleging continuing gender
discrimination from November 2008 until the date of her termination.  She claimed constant harassment and
belittlement from the Regional Director of Operations, Paul Miller, and that
she was not the only female subjected to Miller’s demeaning behavior and double
standards.  Beatty further asserted that
prior to her termination, she had not received a single disciplinary action
warning that her job was in jeopardy or a negative performance evaluation.  She was the only female CEO in her region and
upon her termination, the position was filled by a man who was previously the
director of environmental services.  

            On October 28, 2010, Beatty filed
suit against Appellants, alleging essentially the same gender discrimination
allegations contained in her Texas Workforce Commission Complaint against IHS.  The only explanation she was given was that “the
hospital was not going in the direction they wanted to.”  Beatty sought front and back pay benefits,
compensatory damages, punitive damages, attorney’s fees, costs, and prejudgment
and post-judgment interest.  Appellants
collectively filed a motion to compel arbitration, attaching a copy of a
document signed by Beatty on September 23, 2008.

THE ARBITRATION AGREEMENT

The document, entitled “Mutual Arbitration Agreement” provides in
relevant part: 

IHS Acquisition No. 174, Inc. (‘Employer’) as an
affiliate of Lyric Health Care Holdings, III, Inc. maintains an Employee Injury
Benefit Plan (the ‘Plan’) to pay benefits to Participants due to injuries or
illnesses incurred in the course and scope of employment with Company or
affiliates of Company who adopt the Plan. 
The Plan pays defined: (i) disability wage replacement benefits; (ii)
death benefits to Participant’s beneficiaries; (iii) dismemberment/loss of use
benefits; and (iv) medical benefits.

 

The Mutual
Arbitration Agreement (‘Agreement’) binds Employer and Employee to arbitrate
claims covered by this Agreement.  The Effective
Date of this Agreement is for employees currently employed by Employer, three
(3) business days following the notice date of the Plan (through receipt of the
Summary Plan Description) (‘Notice Date’). 
The Notice Date is August 8, 2008.  If an Employee is hired after the Notice
Date, the Employee shall be provided a copy of the Summary Plan Description and
this Agreement and will be bound by this Agreement and covered by the Plan. 

 

I.  ARBITRATION

(This is our agreement to binding
arbitration.)

 

The Employer and
Employee each agree to binding arbitration of all claims and disputes described
hereafter, whether these claims and disputes exist now or arise in the
future.  All claims subject to
arbitration must be submitted to arbitration within one year of the date of the
incident giving rise to the claim or is forever barred.  The claims, disputes and allegations subject
to binding arbitration under this Agreement include my claims involving
Employer, as well as Employer’s claims against me, for: 

 

1. Employer’s
negligence, gross negligence, strict liability, intentional act, omission or
any other claim or cause of action with respect to any employment-related
death, injuries, trauma or illness; 

 

2. tort claims
(including, but not limited to, any claims for bodily injury or physical,
mental or psychological injury) for injuries, trauma or illness I may sustain
in the course and scope of my employment; 

 

3. claims for
wrongful termination, demotion, or discharge under statutory of common law,
including retaliatory discharge claims related to workplace injuries, illnesses
or trauma; 

 

4. claims for a
violation of any federal, state or other government law, statute, regulation or
ordinance relating directly or indirectly to my workplace injury, illness or
trauma; and 

 

5. any and all
claims challenging the validity or enforceability of this Agreement (in whole
or in part) or challenging the applicability of this Agreement to a particular
dispute or claim. 

 

The appeal of a
full or partial denial of benefits under the Plan is not covered by this
Agreement. 

 

BY ARBITRATING THESE CLAIMS, EMPLOYER AND
EMPLOYEE UNDERSTAND THAT FOR EACH PARTY ANY CAUSE OF ACTION DESCRIBED IN THIS
AGREEMENT WILL BE SUBJECT TO RESOLUTION IN ARBITRATION ACCORDING TO THE
PROCEDURES PROVIDED IN THIS AGREEMENT. 

 

II.  ARBITRATION
PROCEDURES

(This is how the arbitration will be
conducted)

 

.          .          .

 

III.  TERM

 

Employer may
modify or terminate this Agreement at any time. 
Any such change shall be prospective only.  No change, amendment, modification or
termination shall affect the obligation of both parties to arbitrate, whether
the request for arbitration was before or after any modification, amendment, or
termination of this Agreement.  The
Agreement in place at the time of the occurrence of the arbitration event shall
govern. 

 

THE MISNOMER

The agreement binds the “Employer,”
listed as IHS Acquisition No. 174 as an affiliate of Lyric
Health Care Holdings, III, Inc.  But
Beatty was employed by IHS Acquisition No. 171, filed her complaint against
IHS Acquisition No. 171, and ultimately sued IHS Acquisition No.
171.  While Appellants maintain the
contract contains a simple scrivener’s error, Beatty counters that because IHS
does not claim to be the same entity as IHS Acquisition No. 174 and does not
claim to be an alter ego of IHS Acquisition No. 174,  IHS is not a party to the arbitration policy
and cannot enforce it.

STANDARD OF REVIEW

                The parties do not dispute that the FAA applies to this
proceeding.  See 9 U.S.C.A. §§ 1-16 (West 2009). 
Section 51.016 of the Texas Civil Practice and Remedies Code permits the
interlocutory appeal of an order denying a motion to compel arbitration under
the Federal Arbitration Act.  Tex.Civ.Prac.&Rem.Code Ann. § 51.016
(West Supp. 2011).  A trial court’s determination
regarding the validity of an agreement to arbitrate is a question of law which
we review de novo.  J.M.
Davidson, Inc. v. Webster, 128 S.W.3d 223, 227 (Tex. 2003).  A trial court abuses its discretion when it
refuses to compel arbitration pursuant to a valid and enforceable arbitration
agreement.  In re Halliburton Co., 80 S.W.3d 566, 573 (Tex. 2002)(orig.
proceeding).

            A party seeking to compel
arbitration must first satisfy a two-pronged burden of proof: first, it must
demonstrate the existence of a valid agreement to arbitrate the dispute, and
second, it must prove that the claims asserted are within the scope of the
agreement.  In re Dillard Dept. Stores, Inc., 186 S.W.3d 514, 515 (Tex. 2006); In re AdvancePCS Health L.P., 172 S.W.3d
603, 605 (Tex. 2005)(orig. proceeding); Budd
v. Max International LLC, 339 S.W.3d 915, 918 (Tex.App.--Dallas 2011, no
pet.).  If the party seeking arbitration
carries its initial burden, then the burden shifts to the party opposite to
present evidence of an affirmative defense. 
Id.  

            While a strong presumption favoring
arbitration exists, the presumption arises only after the party seeking to
compel arbitration proves that a valid arbitration agreement exists.  J.M.
Davidson, Inc., 128 S.W.3d at 227.  In
deciding whether a party has met its initial burden, we do not resolve doubts
or indulge a presumption in favor of arbitration.  Id.  Rather, the party attempting to compel
arbitration must show that the arbitration agreement meets all requisite
contract requirements.  Id. at 228.  If the trial court determines that a valid
agreement exists, the burden shifts to the party opposing arbitration to raise
an affirmative defense to enforcement of the arbitration agreement.  Id.
at 227-28. 

APPLICABLE LAW

The Federal
Arbitration Act (FAA)

            The FAA provides, in relevant part:

A written provision
in . . . a contract evidencing a transaction involving commerce to settle by
arbitration a controversy thereafter arising out of such contract . . . shall
be valid, irrevocable, and enforceable, save upon such grounds as exist at law
or in equity for the revocation of any contract.

 

See 9 U.S.C. § 2 (West 2009); Rent-A-Center West, Inc. v. Jackson, ---
U.S.---, 130 S.Ct. 2772, 2776, 177 L.Ed.2d 403 (2010), quoting Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,
460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).  The above provision has been described as
reflecting both a “liberal federal policy favoring arbitration,” and the “fundamental
principle that arbitration is a matter of contract.”  See
AT&T Mobility LLC v. Conception, --- U.S. ---, 131 S.Ct. 1740, 1745,
179 L.Ed.2d 742 (2011) citing Moses H.
Cone Memorial Hospital, 460 U.S. at 24, 103 S.Ct. at 927 and Rent-A-Center, --- U.S. at ---, 130
S.Ct. at 2776.  “The FAA thereby places
arbitration agreements on an equal footing with other contracts, and requires
courts to enforce them according to their terms.”  Rent-A-Center,
--- U.S. ---, 130 S.Ct. 2776 (internal citations omitted); citing Buckeye Check Cashing,
Inc. v. Cardegna, 546 U.S. 440, 443, 126 S.Ct. 1204, 163 L.Ed.2d 1038
(2006) and Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford
Junior Univ., 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

            An agreement to arbitrate is a
contract, the relation of the parties is contractual, and the rights and
liabilities of the parties are controlled by the law of contracts.  As such, a party cannot be required to submit
to arbitration any dispute which she has not agreed to submit.  See AT&T
Mobility LLC, 131 S.Ct. at 1740 (arbitration is a creature of contract; a
person can be compelled to arbitrate a dispute only if, to the extent that, and
in the manner which, he has agreed so to do). 
Because arbitration is based on a contractual relationship, a party who
has not consented cannot not be forced to arbitrate a dispute.  Since arbitration is generally a matter of
contract, the FAA requires courts to honor parties’ expectations.  9 U.S.C.A. § 1 et seq.; AT&T Mobility
LLC, 131 S.Ct. at 1740.

Texas
Law - Formation of Contracts

            When determining the validity of
arbitration agreements that are subject to the FAA, we apply ordinary state law
contract principles that govern the formation of contracts.  In re
Palm Harbor Homes, Inc., 195 S.W.3d 672, 676 (Tex. 2006), citing First Options of Chicago, Inc. v.
Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); In re Kellogg Brown & Root, Inc., 166
S.W.3d 732, 738 (Tex. 2005).  The party
attempting to compel arbitration must show that the arbitration agreement meets
all requisite contract elements.  J.M. Davidson, Inc., 128 S.W.3d at
228.  The following elements are required
for the formation of a valid and binding contract: (1) an offer; (2) acceptance
in strict compliance with the terms of the offer; (3) a meeting of the minds;
(4) each party’s consent to the term; and (5) execution and delivery of the
contract with the intent that it be mutual and binding.  Cessna
Aircraft Co. v. Aircraft Network, L.L.C., 213 S.W.3d 455, 465
(Tex.App.--Dallas 2006, pet. denied).  Like
other contracts, an agreement to arbitrate must be supported by consideration.  In re
Palm Harbor Homes, Inc., 195 S.W.3d at 676; In re AdvancePCS Health L.P., 172 S.W.3d 603, 607 (Tex. 2005)(per curiam).

Mutual
Promises and Consideration

            Mutual, reciprocal promises which
bind both parties may constitute consideration for a contract.  Texas
Custom Pools, Inc. v. Clayton, 293 S.W.3d 299, 309 (Tex.App.--El Paso 2009,
no pet.).  In the case of a stand-alone
arbitration agreement, both sides are required to enter into binding promises to
arbitrate.  In re AdvancePCS, 172 S.W.3d at 607; see also In re 24R, Inc., 324 S.W.3d 564, 566 (Tex. 2010)(mutual
promises to submit a dispute to arbitration are sufficient consideration to
support an arbitration agreement); see
also In re Halliburton Co., 80 S.W.3d at 569-70 and J.M. Davidson, Inc., 128 S.W.3d at 228 (cases noting that when
mutual promises to submit employment disputes to arbitration bind both parties
to their promises to arbitrate, sufficient consideration exists to support an
arbitration agreement between the employer and the at-will employee).




 

Illusory
Promises

            A promise which does not bind the
promisor, as when the promisor retains the option to discontinue performance,
is illusory.  In re 24R, Inc., 324 S.W.3d 564, 567 (Tex. 2010), citing Mann Frankfort Stein & Lipp
Advisors, Inc. v. Fielding, 289 S.W.3d 844, 849 (Tex. 2009); see also J.M. Davidson, Inc., 128 S.W.3d
at 228; Light v. Centel Cellular Co.,
883 S.W.2d 642, 645 (Tex. 1994)(employer’s promises were illusory because they
were dependent upon at-will employee’s period of continued employment; thus,
employer could avoid performance by terminating at-will employee’s employment
while the employee was bound to her promise whether or not she remained
employed).  Consequently, when a
purported bilateral contract is supported only by illusory promises, there is
no contract.  In re 24R, Inc., 324 S.W.3d at 567, citing Vanegas v. American Energy Services, 302 S.W.3d 299, 302
(Tex. 2009), quoting Light, 883
S.W.2d at 644-45.

            However, where an employer cannot
avoid its promise to arbitrate by amending a termination provision or
terminating it altogether, the dispute resolution plan is not illusory.  See
J.M. Davidson, Inc., 128 S.W.3d at
228; In re Polymerica, LLC, 296
S.W.3d 74, 76 (Tex. 2009); see also In re
Halliburton Co., 80 S.W.3d at 569-70 (when
mutual promises to submit employment disputes to arbitration bind both parties
to their promises to arbitrate, sufficient consideration exists to support an
arbitration agreement between the employer and the at-will employee). 

ANALYSIS

            Appellants
bring two issues for review.  In Issue
One, they complain that the trial court erred in denying the motion to compel
because pursuant to the contractual language, the arbitrator, not the trial
court, should decide gateway issues of validity, enforceability, and
arbitrability.  Alternatively, in Issue
Two, Appellants suggest that even if the trial court had the authority to
decide arbitrability, it abused its discretion in denying the motion to
compel.  The crux of the dispute is the
misnomer.  Appellants argue that
this clerical error is itself a gateway issue and therefore must be arbitrated
under the express terms of the Agreement. 
In contrast, Beatty focuses on two
arguments:  (1) a court should decide
whether the Agreement is enforceable, not an arbitrator; and (2) no agreement
exists between the parties because IHS is not the “Employer” referenced in the Agreement.  

Court Or Arbitrator?

            When a dispute involving an
agreement to arbitrate is brought to a court for resolution, it is the court’s
obligation to determine whether the parties agreed to submit a particular issue
to arbitration.  See United Steelworkers of
America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403
(1960); Del E. Webb Const. v. Richardson
Hosp. Authority, 823 F.2d 145 (5th Cir. 1987).  An arbitration provision may give the
arbitrator the power to resolve gateway issues regarding validity and
enforceability of the arbitration agreement. 
In that event, the entire matter of arbitrability is transferred from
the courts to the arbitrator.  Unless the
agreement clearly demonstrates that the parties intended to confer on the
arbitrator the power to determine what disputes are arbitrable, the court
retains the duty to decide that issue.  Arbitration
agreements that clearly and unmistakably show intent to assign gateway issues
to the arbitrator are fully enforceable.  See
Rent-A-Center, -- U.S.--, 130 S.Ct. at 2777; First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943, 115
S.Ct. 1920, 131 L.Ed.2d 985 (1985)(holding question of primary power to decide
arbitrability “turns upon what the parties agreed about that matter”); AT&T Technologies, Inc. v. Communications
Workers, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986)(holding
parties may agree to arbitrate arbitrability). 
Accordingly, under First Options,
gateway questions  which are normally decided by a court will be
submitted to an arbitrator where the agreement was clear and unmistakable.   See
First Options, 514 U.S. at 943; AT&T
Technologies, Inc., 475 U.S. at 649, 106 S.Ct. at 1418.  

            Here, the Agreement provided that “any and all claims challenging the validity or
enforceability of this Agreement . . .” are subject to arbitration.  It thus clearly and unmistakably provided for
issues of validity and enforceability to go to the arbitrator.  Beatty argues that whether the contract is
supported by adequate consideration is not an issue of validity or
enforceability but rather an issue of formation for the court to decide.  We disagree. 
The Agreement bears Beatty’s signature evidencing her assent to its
terms and clearly provides for an arbitrator to decide all issues of
arbitrability.   

            In
Rent-A-Center, the Supreme Court
clarified how courts must treat challenges to an arbitration agreement’s
delegation provision.  See Rent-A-Center
--- U.S. ----, 130 S.Ct. 2772.  

The
Arbitrator, and not any federal, state, or local court or agency, shall have
exclusive authority to resolve any dispute relating to interpretation,
applicability, enforceability or formation of this Agreement including, but not
limited to any claim that all or any part of this Agreement is void or
voidable.

 

Id. at 2775-76. 
According to the Supreme Court, the analysis in situations challenging a
stand-alone arbitration agreement containing a delegation provision depends on
the kind of challenge being made.  Id.  If the challenge relates to the arbitration
agreement as a whole, and the agreement contains a provision delegating issues
of arbitrability to the arbitrator, then the challenge must be directed to
arbitration.  Id.  If the challenge is
specific to the issue of delegation, however, then the court must resolve the
challenge.  Id.

            The
Agreement presented clearly and unmistakably provides that issues of validity
and enforceability go to the arbitrator. 
Beatty signed the Agreement, manifesting her
intent that gateway issues be arbitrated.  Additionally, Beatty challenges the entire
arbitration agreement based on the assertion that the term provision renders
the Agreement illusory.  Under Rent-A-Center, because there is a
specific delegation provision, and Beatty challenges the Agreement as a whole,
rather than the specific delegation provision, the issue goes to the
arbitrator.  Therefore, the
determination of whether the agreement is illusory is for the arbitrator and
not the court. 

Effect of the Misnomer

            We have already highlighted the
misnomer in the Agreement.  Beatty was
employed by IHS Acquisition No. 171 d/b/a Mesa Hills Specialty
Hospital but the Agreement defines “Employer” to mean “IHS Acquisition No. 174.  Beatty argues that the Appellants failed to
demonstrate the existence of an arbitration agreement between the parties.  A
misnomer does not render an arbitration agreement unenforceable.  See
Fogal v. Stature Construction, Inc., 294
S.W.3d 708, 716 (Tex.App.--Houston [1st Dist.] 2009, pet. denied).  In Fogal,
the arbitration clause was signed by the Fogals and Tremont Homes, and the
entity named Stature Construction appeared at first to be a non-signatory to
the arbitration agreement.  Fogal, 294 S.W.3d at 717.  However, evidence was produced showing that Stature
Construction was doing business as “Tremont Custom Homes” (which was the entity
that should have been listed on the earnest-money contract that referred to
Tremont Homes).  Id.  Moreover, evidence
showed that the deed for the house purchased by the Fogals reflected that
Stature was the seller referred to in the earnest-money contract.  Id.  The Fogals did not dispute that Stature was
the seller or that Stature was doing business as Tremont Custom Homes.  Instead, the Fogals built their non-arbitration argument on the technical error
mentioning “Tremont Homes” rather than “Tremont Custom Homes,” and claimed that
since there was not an assumed name certificate filed with the Texas Secretary
of State, Stature could not enforce the arbitration agreement.  Id.  The Houston Court noted that: 

Because arbitration
is contractual in nature, the FAA generally ‘does not require parties to
arbitrate when they have not agreed to do so.’ 
Federal and Texas state courts have recognized, however, that “ ‘[i]t
does not follow . . . that under the [FAA] an obligation to arbitrate attaches
only to one who has personally signed the written arbitration provision’;
instead, under certain circumstances, principles of contract law and agency may
bind a non-signatory to an arbitration agreement.”

 

Id., citing
Kellogg Brown & Root, 166 S.W.3d at 738.  Although that case dealt with whether or not
an assumed named certificate was required, the Houston Court of Appeals ultimately
held that Stature could enforce the arbitration agreement, despite the
technical deficiencies.  Id. at 717-18.

            In construing an arbitration
agreement, the court should attempt to give effect to the parties’ intentions,
in light of the usual and ordinary meaning of the contractual language and the
circumstances under which the agreement was made.  See In
re Kaplan Higher Educ. Corp., 235 S.W.3d 206, 210 (Tex. 2007)(“Arbitration
agreements are enforced according to their terms and according to the
intentions of the parties.”)(internal quotations and citations omitted).  Here, the Agreement clearly evidences an
intent for the “Employer” and “Employee” to mutually arbitrate a specific and
detailed list of disputes.  The parties’
intent is ascertained by looking to the plain language of the agreement.  Appellants not only presented the signed
Agreement, it is  undisputed that Beatty
was employed by IHS 171 at the time the Agreement was signed.  Beatty did not present evidence that she did
not intend to enter into an Agreement with her Employer or that she was not
employed by IHS 171 at the time she signed the Agreement.  Nor does Beatty present any evidence that she
ever worked for IHS 174.  

            To
meet their burden, Appellants must demonstrate the existence of a valid
agreement to arbitrate the claimed disputes. 
Although not always expressly stated, part of this requirement is that
the Agreement be between the parties.  Even
though the Agreement provides that issues of validity and enforceability must
go to an arbitrator, Appellants still bear the burden of producing some
evidence that they were either a party to the Agreement or otherwise had rights
to enforce it.  They presented an
Agreement which is clearly between an Employer and Employee.  Although the Agreement defines the Employer
as IHS Acquisition 174, Appellants also produced
evidence that at the time the Agreement was signed, Beatty was employed by IHS 

Acquisitions 171
and that Beatty had never been employed by IHS 174.  

Affirmative Defense

            If the party seeking arbitration
carries its initial burden, then the burden shifts to the party opposing
arbitration to present evidence on an affirmative defense to the arbitration
agreement.  J.M. Davidson, Inc., 128 S.W.3d at 227.  In the context of enforcement of an
arbitration agreement, defenses refer to unconscionability, duress, fraudulent
inducement, and revocation.  In re FirstMerit Bank, N.A., 52 S.W.3d
749, 756 (Tex. 2001).  Because the law
favors arbitration, the burden of proving a defense to arbitration is on the
party opposing it.  See J.M. Davidson, Inc., 128 S.W.3d at 227. 

            Beatty has not offered evidence as
to any of the applicable affirmative defenses. 
Her only claims related to issues of arbitrability which we have already
determined must be presented to the arbitrator. 
We conclude that the trial court erred in refusing to compel
arbitration.  We sustain both issues for
review and reverse and remand for orders compelling arbitration.

 

 

May 9, 2012                                        ________________________________________________

ANN CRAWFORD
McCLURE, Chief Justice

 

Before McClure, C.J., Rivera, and Antcliff, JJ.