

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## No. 13-10-00115-CV

## IN RE RIO GRANDE XARIN II, LTD.

## On Petition for Writ of Mandamus.

## No. 13-10-00116-CV

RIO GRANDE XARIN, II, LTD.,                                    Appellant,

v.

WOLVERINE ROBSTOWN, L.P.,                                    Appellee.

## On Appeal from the 94th District Court
## of Nueces County, Texas

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Vela**
**Memorandum Opinion by Justice Vela**

Through a consolidated appeal in cause number 13-10-00116-CV and original proceeding in cause number 13-10-00115-CV, Rio Grande Xarin II, Ltd. ("Rio Grande"), seeks to set aside an order vacating an arbitration award. We reverse and remand.

## I. Background

Rio Grande owned Robstown Shopping Center, located in Robstown, Texas, and leased parts of the premises to commercial tenants, including CVS Corporation. Rio Grande and Wolverine Robstown, L.P. ("Wolverine") entered into a "Commercial Earnest Money Contract" under which Wolverine agreed to purchase Robstown Shopping Center from Rio Grande. Paragraph 23 of the earnest money contract included an arbitration agreement, stating in relevant part:

> ARBITRATION OF DISPUTES: If a controversy arises out of this Agreement (including but not limited to the parties' rights to any Deposit or the payment of any Commission(s) as provided herein) or the transaction contemplated herein, Buyer, Seller[,] and Agent agree that such controversy shall be settled by final, binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any Court having jurisdiction thereof. In determining any question, matter or dispute, the arbitrator(s) shall apply the provisions of this Agreement without varying therefrom, and shall not have the power to add to, modify, or change any of the provisions hereof. Notwithstanding anything to the contrary herein, Agent may initiate a judicial action to the extent necessary to perfect its lien rights.

Subsequently, Wolverine purchased the shopping center from Rio Grande and assumed Rio Grande's role as landlord to the commercial tenants. After consummation of the sale, Wolverine and Rio Grande disputed ownership of a portion of the monthly rentals due to the owner of the shopping center from CVS under its commercial lease.

2

On February 27, 2009, Rio Grande notified Wolverine that there was a dispute as to accrued rent and stated that, under the contract, "disputes relating to the sale and purchase shall be resolved by Arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association." Rio Grande requested arbitration of this issue and any others related thereto, and by copy of the letter, notified the "AAA office for Case Management in Dallas, Texas," who "will initiate the [a]rbitrator selection process, the exchange of information, and time[-]table[-]related issues." On March 9, 2009, Rio Grande sent a letter to the American Arbitration Association ("AAA") requesting arbitration and enclosing the arbitration fee. Rio Grande sent a copy of this correspondence to Wolverine.

On March 10, 2009, Wolverine responded to Rio Grande, stating that it was "not convinced" that the matter should be subject to arbitration and it "may be more appropriate that we resolve our dispute in District Court," although Wolverine would "prefer we discuss this issue further." By letter dated March 18, 2009 and copied to Wolverine, Rio Grande again requested that the AAA arbitrate the dispute. On March 23, 2009, the AAA notified the parties that:

> The Association has carefully reviewed the positions and contentions of the parties as set forth in their correspondence. The claimant has met the filing requirements of the rules by filing a demand for arbitration providing for administration by the American Arbitration Association under its rules.
>
> Accordingly, in the absence of an agreement by the parties or a court order staying this matter, the Association will proceed with administration pursuant to the Rules. The parties may wish to raise the issue of the scope of the arbitration clause, upon appointment of the arbitrator.

By return correspondence dated April 1, 2009, Wolverine notified the AAA that it "remains our position that arbitration is no longer a remedy," and that if the AAA "persist[s] in scheduling arbitration in this matter, we will file a lawsuit in the courthouse prior to the

arbitration."

On April 3, 2009, the AAA acknowledged receipt of Wolverine's position as stated in its April 1 correspondence and provided the parties with a list of arbitrators from which to choose. On April 7, 2009, Wolverine responded to the AAA that it still believed arbitration was not appropriate, but it nevertheless deemed two of the arbitrators "remotely acceptable." According to Wolverine's letter, "[w]e still believe that arbitration is not proper in this matter and we intend to challenge it in the proper court." That same day, Wolverine notified Rio Grande that it "intend[s] to go to the courthouse prior to arbitration," but stated that, "if your client will agree that either party can appeal 'trial de novo' to the District Court, [Wolverine] will agree to arbitration."

The AAA thereafter appointed John K. Boyce, III, as arbitrator in this matter. Boyce was one of the two arbitrators on AAA's list that Wolverine deemed "remotely acceptable." On June 8, Rio Grande submitted to Boyce "factual information and authorities" regarding its position regarding the arbitrability of the dispute. On June 12, Wolverine submitted a response to Boyce, continuing to object to the arbitrability of the dispute, specifically discussing the "non-applicability of the arbitration provision to post-closing disputes," and further stating that the filing of the response "should not be construed in any way to indicate our acceptance of arbitration in this matter." On June 15 and June 16, the parties provided additional information to Boyce regarding their positions as to the arbitrability of the dispute.

On June 16, Boyce entered an order denying Wolverine's motion to dismiss the arbitration proceeding. According to Boyce's order, the "referenced dispute is arbitrable, and the case should proceed to hearing." On June 17, Wolverine requested that Boyce

4

provide his reasoning for denying its motion to dismiss. Counsel for Wolverine stated that, "[i]f I can be shown how I am wrong and that we did agree to mediation post-closing, I will, of course, participate and not seek relief in the courthouse." On June 23, the AAA notified the parties that Boyce declined Wolverine's request for a "reasoned" opinion regarding the decision on arbitrability.

On July 1, the AAA "reminded" the parties that arbitration was scheduled to commence on July 8. On July 7, Wolverine notified Boyce that it had filed suit against Rio Grande in the 94th District Court of Nueces County and was continuing to withhold its "consent" to arbitration, but that corporate counsel would nevertheless be available to "pursue informal mediation" on July 8. Wolverine did not file a motion to stay the arbitration in the lawsuit filed in district court or otherwise seek relief from the scheduled arbitration.

Arbitration commenced on July 8. Wolverine's counsel and witness, "though initially appearing, refused to participate and walked out." On July 21, Boyce entered an award in favor of Rio Grande of $46,587.93 for breach of the earnest money contract. The award further included attorney's fees, post-award interest, and costs.

After arbitration, Rio Grande filed an answer to Wolverine's petition and a motion to confirm the arbitration award in the lawsuit pending in the 94th District Court. Wolverine, in contrast, filed a motion to vacate the arbitration award. On February 10, 2010, the trial court denied Rio Grande's motion and granted Wolverine's, vacating the arbitration award in favor of Rio Grande. This appeal and original proceeding ensued. This Court previously granted Rio Grande's motion to consolidate the matters for the purposes of judicial economy. We grant Rio Grande's motion to file its reply brief.

## II. FEDERAL ARBITRATION ACT

Rio Grande asserts that this matter involves a transaction in interstate commerce and Wolverine does not dispute this. Accordingly, we apply the provisions of the Federal Arbitration Act to the instant case. *See generally* 9 U.S.C. §§ 1-16 (2009) ("FAA"). Nevertheless, "federal procedure does not apply in Texas courts, even when Texas courts apply the [FAA]." *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex. 1992); *see also Chestnut Energy Partners v. Tapia (In re Chestnut Energy Partners, Inc.)*, 300 S.W.3d 386, 394-95 (Tex. App.–Dallas 2009, no pet.) (combined appeal and original proceeding); *Roehrs v. FSI Holdings, Inc.*, 246 S.W.3d 796, 804 (Tex. App.–Dallas 2008, pet. denied) ("Procedural matters relating to the confirmation of arbitration awards in Texas courts are governed by Texas law even if the FAA supplies the substantive rules of decision."); *Holcim (Tex.) Ltd. P'ship v. Humboldt Wedag, Inc.*, 211 S.W.3d 796, 800-01 (Tex. App.–Waco 2006, no pet.) ("When Texas courts confront procedural issues involving a case subject to the FAA, however, Texas procedural rules apply instead of federal rules."); *J.D. Edwards World Solutions Co. v. Estes, Inc.*, 91 S.W.3d 836, 839 (Tex. App.–Fort Worth 2002, pet. denied) (same).

## III. MANDAMUS OR APPEAL

Until recently, mandamus was the appropriate method to enforce arbitration provisions governed by the FAA. *See Jack B. Anglin Co.*, 842 S.W.2d at 272. Texas Civil Practice & Remedies Code section 51.016, enacted in 2009, provides for an interlocutory appeal in a matter subject to the FAA "under the same circumstances that an appeal from a federal district court's order or decision would be permitted by" the FAA. *See* TEX. CIV.

6

PRAC. & REM. CODE ANN. § 51.016 (Vernon Supp. 2009). Section 51.016 applies to this case. *See* Act of May 27, 2009, 81st Leg., R.S., ch. 820, § 1, 2009 Tex. Gen. Laws 2061, 2061 (codified at TEX. CIV. PRAC. & REM. CODE ANN. § 51.016).

Section 16 of the FAA sets out when an interlocutory appeal of an arbitration order is permitted:

(a) An appeal may be taken from—

(1) an order—

(A) refusing a stay of any action under section 3 of this title,

(B) denying a petition under section 4 of this title to order arbitration to proceed,

(C) denying an application under section 206 of this title to compel arbitration,

(D) confirming or denying confirmation of an award or partial award, or

(E) modifying, correcting, or vacating an award.

9 U.S.C. § 16(a)(1). This is an appeal from an order vacating an arbitration award and denying a motion to compel arbitration. Thus, the appeal is properly before us, and we have jurisdiction over the matters at issue.[1] Accordingly, we deny the petition for writ of mandamus and address the substance of the appeal. *In re Prudential Ins. Co. of Am.*, 148

---

[1] Rio Grande filed a "conditional" motion for extension of time to file its notice of appeal. In the instant case, the order vacating the arbitration award was entered February 10, 2010. As an accelerated appeal of an interlocutory order, the notice of appeal was due within twenty days. *See* TEX. R. APP. P. 26.1(b). Thus, the notice of appeal was due on March 2, 2010, but was not filed until March 11, 2010. Rio Grande filed a motion for extension of time to file the notice of appeal on March 17, 2010, within the time allowed by Texas Rule of Appellate Procedure 26.3. *See id.* at R. 26.3. The motion for extension of time provides a "plausible" statement of circumstances indicating that failure to file within the specified period of was not deliberate or intentional, but was the result of inadvertence, mistake, or mischance. *See Houser v. McElveen*, 243 S.W.3d 646, 647 (Tex. 2008); *Hone v. Hanafin*, 104 S.W.3d 884, 886 (Tex. 2003) (per curiam); *Meshwert v. Meshwert*, 549 S.W.2d 383, 384 (Tex. 1977). Accordingly, we grant the conditional motion for extension of time to file the notice of appeal.

S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding) (stating that in order to obtain mandamus relief, the relator must show a clear abuse of discretion and that the relator has no adequate remedy by appeal). Rio Grande raises three issues on appeal, through which it contends that: (1) it was entitled to enforce the arbitration agreement; (2) the arbitrator had the authority to decide the arbitrability of the dispute; and (3) the trial court erred in vacating the arbitration award.

## IV. VALIDITY AND SCOPE

By its first issue, Rio Grande asserts that it was entitled to enforce the arbitration agreement. A party seeking to compel arbitration under the FAA must: (1) establish the existence of a valid agreement to arbitrate under the FAA; and (2) show that the claims in dispute are within the scope of the agreement. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). "Whether a valid arbitration agreement exists is a legal question subject to de novo review." *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (orig. proceeding). In determining the validity of agreements to arbitrate which are subject to the FAA, we generally apply state-law principles governing the formation of contracts. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (orig. proceeding) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). If the trial court finds there is a valid agreement to arbitrate, the burden shifts to the party opposing arbitration to prove his defenses. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

Once a valid agreement to arbitrate has been established, the court must then determine whether the arbitration agreement covers the nonmovants' claims. *In re*

8

*FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding). To determine whether an existing arbitration agreement covers a party's claims, a court must "focus on the complaint's factual allegations rather than the legal causes of action asserted." *Id.* at 754. Federal policy embodied in the FAA favors agreements to arbitrate, and courts must resolve any doubts about an arbitration agreement's scope in favor of arbitration. *Id.* at 753. If the arbitration agreement encompasses the claims and the party opposing arbitration has failed to prove its defenses, the trial court has no discretion but to compel arbitration and stay its own proceedings. *Id*. at 753-54; *D.R. Horton, Inc. v. Brooks*, 207 S.W.3d 862, 866-67 (Tex. App.–Houston [14th Dist.] 2006, no pet.); *Feldman/Matz Interests, L.L.P. v. Settlement Capital Corp.*, 140 S.W.3d 879, 883 (Tex. App.–Houston [14th Dist.] 2004, no pet.).

In the instant case, the earnest money contract includes an arbitration agreement that requires the arbitration of controversies "arising out of this Agreement" or "the transaction contemplated herein." The contract further provides for "final, binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association."

We conclude that Rio Grande has established the existence of an arbitration agreement, and, given the breadth of the arbitration agreement, that the claims in this lawsuit fall within the scope of this agreement. *See, e.g.*, *In re FirstMerit Bank, N.A.*, 52 S.W.3d at 754. The contract requires arbitration of controversies arising out of the agreement and the transaction contemplated therein, and this broad arbitration provision includes within its scope the dispute between Rio Grande and Wolverine as to ownership

9

of the lease payments.  *See, e.g., In re Swift Transp. Co.*, 279 S.W.3d 403, 408 (Tex. App.–Dallas 2009, orig. proceeding).

Wolverine contends that this arbitration provision did not survive the closing of the real estate transaction.  Specifically, Wolverine contends that the dispute at issue regarding the ownership of post-closing rental payments is not subject to the arbitration provision in the pre-closing earnest money contract.  In making this argument, Wolverine points out that three other paragraphs in the earnest money contract expressly provide that they survive closing or termination of the contract:  paragraph 8.2 (the paragraph concerning "inspections, studies, or assessments" states that it "survives termination of this contract"); paragraph 12 (the paragraph concerning the "'as is' condition of property" states that it "will survive the closing"); and paragraph 17 (the paragraph concerning "rollback taxes" states that it "survives the [c]losing").  Wolverine thus contends that the omission of similar language in the arbitration paragraph compels the conclusion that the arbitration provision in the earnest money contract expired upon closing.[2]

Wolverine's argument is premised on the general rules applicable to the construction of contracts.  General principles of contract interpretation apply to arbitration contracts. *J.M. Davidson, Inc.*, 128 S.W.3d at 227 ("Arbitration agreements are interpreted under traditional contract principles.").  Accordingly, when construing a contract containing an arbitration provision, the court should "consider the entire writing, giving effect to all its provisions so that none are rendered meaningless." *See Chrysler Ins. Co. v. Greenspoint*

---

[2] The earnest money contract includes a paragraph entitled "integration and survival," which, ironically, does not expressly address the survival of any contractual provisions in the contract, except that, in the case that a portion of the agreement is rendered invalid or otherwise unenforceable, "the remainder of the Agreement shall remain valid and binding as between the parties."

10

*Dodge of Houston, Inc.*, 297 S.W.3d 248, 253 (Tex. 2009). Wolverine further premises its argument on the doctrine of "merger." Under the merger doctrine, it is a general rule that a deed made in full execution of a contract of sale of land merges the provisions of the contract. *Harris v. Rowe*, 593 S.W.2d 303, 306-07 (Tex. 1979); *Munawar v. Cadle Co.*, 2 S.W.3d 12, 16-17 (Tex. App.–Corpus Christi 1999, pet. denied). However, there are exceptions to this rule. For instance, a deed which constitutes only partial performance of the preceding contract does not merge other distinct and unperformed provisions of the contract. *Harris*, 593 S.W.2d at 307.

Based on the express language of the arbitration provision, we disagree with Wolverine's contention. The commercial earnest money contract explicitly provides for arbitration of controversies arising "out of this Agreement . . . or the transaction contemplated herein." Thus, the earnest money contract requires arbitration not only of controversies arising from the earnest money contract, but also those disputes arising from the ultimate "transaction" contemplated by the parties.

Further, we conclude that the doctrine of merger is not applicable in this case because the earnest money contract in this case contained agreements that created rights collateral to and independent of the conveyance. *See Stanford Dev. Corp. v. Stanford Condo. Owners Ass'n*, 285 S.W.3d 45, 52 (Tex. App.–Houston [1st Dist.] 2009, no pet.) (holding that an arbitration agreement contained in an earnest money contract did not merge into the deed). In this regard, the earnest money contract expressly includes and addresses ownership of "[a]ny and all leases . . . occupancy agreements . . . [and] rents." The contract addresses the duty of the seller to convey at closing "an assignment of all leases to or on the Property" and a "rent roll." The agreement further allocates "[c]ollected

rents" and "advance rentals" between the buyer and the seller of the shopping center. Accordingly, we conclude that the arbitration provision was not extinguished by the closing of the sale.

Wolverine further argues that Rio Grande had no right to enforce the arbitration agreement and the arbitrator lacked authority to conduct arbitration because Rio Grande did not first file a lawsuit in state court and obtain an order from the trial court to proceed with arbitration. Wolverine argues that the trial court properly vacated the arbitration award because "private arbitration must be preceded by a judicial order compelling the arbitration if arbitrability is disputed in advance."

We disagree with Wolverine's proposition. The purpose of an arbitration provision or agreement is to prevent subjecting the parties to litigation in the event of a dispute. *Murray v. Epic Energy Res., Inc. (In re Murray)*, 300 S.W.3d 461, 473 (Tex. App.–Beaumont 2009, no pet.) (combined appeal and original proceeding); *Cayan v. Cayan*, 38 S.W.3d 161, 166 (Tex. App.–Houston [14th Dist.] 2000, pet. denied). Requiring a party who is initiating arbitration pursuant to contract to institute litigation prior to arbitration is nonsensical. Such a procedure deprives the parties of the benefits of the contracted-for arbitration clause and defeats "the purpose of providing a rapid, inexpensive alternative to traditional litigation." *See Jack B. Anglin. Co., Inc.*, 842 S.W.2d at 272-73 ("Absent mandamus relief, Anglin would be deprived of the benefits of the arbitration clause it contracted for, and the purpose of providing a rapid, inexpensive alternative to traditional litigation would be defeated.").

Wolverine bases its contention that Rio Grande had the burden to institute litigation to compel arbitration on section 4 of the FAA and section 171.021(a) of the Texas

12

Arbitration Act.  *See* 9 U.S.C. § 4 (2009) ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction . . . for an order directing that such arbitration proceed in a manner provided for in such agreement."); TEX. CIV. PRAC. & REM. CODE ANN. § 171.021(a) (Vernon 2005) ("A court shall order the parties to arbitrate on application of a party showing:  (1) an agreement to arbitrate; and (2) the opposing party's refusal to arbitrate.").

While both the Texas and federal arbitration statutes allow a party seeking to compel arbitration to institute court proceedings in order to do so, they do not require it. In this regard, we consider it salient that both statutes contemplate that parties seeking to avoid arbitration may also seek a remedy in court.  *See* 9 U.S.C. § 16(a)(1)(A) (allowing review of an order refusing a stay of any action); TEX. CIV. PRAC. & REM. CODE ANN. § 171.098(a)(2) (allowing "a party" to appeal an order granting an application to stay arbitration); *see also Perry Homes v. Cull*, 258 S.W.3d 580, 592 (Tex. 2008) (acknowledging that parties may begin arbitration without a court order).

Our decision on this issue is further compelled by the factual circumstances underlying this matter.  Rio Grande first indicated its intention to institute arbitration proceedings on February 27, 2009.  On March 23, the AAA notified the parties that it would proceed with administration of arbitration "in the absence of an agreement by the parties or a court order staying this matter."  On April 1, Wolverine acknowledged its ability to file suit to avoid arbitration, yet failed to file suit until July 7, the eve of arbitration and more than three months after the AAA instituted proceedings, and, in fact, never sought to stay the arbitration.  Although Wolverine consistently denied the applicability of arbitration, it

13

participated in those matters leading up to the arbitration itself, including selecting an arbitrator and submitting the issue of arbitrability to the arbitrator. Wolverine's position throughout this matter appears to have been premised on the erroneous concepts that mediation and arbitration are somehow interchangeable, or that arbitration and litigation are mutually consistent and parallel remedies.

After considering the foregoing, we conclude that Rio Grande met its burden to establish a valid arbitration agreement and that the claims at issue herein fell within the scope of that agreement. We further conclude that Rio Grande was not required to institute litigation prior to instituting arbitration proceedings. Thus, we sustain Rio Grande's first issue regarding whether it was entitled to enforce the arbitration agreement.

## V. ARBITRABILITY

By its second issue, Rio Grande asserts that the arbitrator had the authority to determine the arbitrability of the dispute. In contrast, Wolverine contends that the arbitrator exceeded his authority by deciding the arbitrability of the dispute.

Under the FAA, absent unmistakable evidence that the parties intended the contrary, it is the court rather than the arbitrator that must decide "gateway matters," such as whether a valid arbitration agreement exists. *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005); *see In re Houston Pipe Line Co.*, No. 08-0800, 2009 Tex. LEXIS 468, at *4, 52 Tex. Sup. J. 1098 (Tex. July 3, 2009) ("When a party disputes the scope of an arbitration provision or raises a defense to the provision, the trial court, not the arbitrator, must decide the issues."); *Perry Homes*, 258 S.W.3d at 589 ("[A]rbitrators generally must decide defenses that apply to the whole contract, while courts decide defenses relating solely to the arbitration clause.").

14

The arbitration clause in the earnest money contract stated that arbitration would be conducted "in accordance with the Commercial Arbitration Rules of the American Arbitration Association." Rule 7(a) of the Commercial Arbitration Rules provides that an arbitrator has the power to rule on his own jurisdiction, "including any objections with respect to the existence, scope, or validity of the arbitration agreement." "When . . . the parties agree to a broad arbitration clause and explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Saxa Inc. v. DFD Architecture Inc.*, No. 05-09-01245-CV, 2010 Tex. App. LEXIS 3137, at *12-14 (Tex. App.–Dallas Apr. 29, 2010, no pet.) (op.); *Haddock v. Quinn*, 287 S.W.3d 158, 172 (Tex. App.–Fort Worth 2009, pet. denied) ("The majority of courts have concluded that express incorporation of rules empowering the arbitrator to decide arbitrability (including ruling upon his or her own jurisdiction) clearly and unmistakably evidences the parties' intent to delegate issues of arbitrability to the arbitrator."); *Burlington Res. Oil & Gas Co. LP v. San Juan Basin Royalty Trust*, 249 S.W.3d 34, 41 (Tex. App.–Houston [1st Dist.] 2007, pet. denied) ("We are also mindful that, in certain circumstances, the incorporation of AAA rules may constitute clear and unmistakable evidence of an intent to allow an arbitrator to decide issues of arbitrability."); *see also Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1368, 1373 (Fed. Cir. 2006) (concluding that an arbitration agreement containing a broad arbitration clause and incorporating the American Arbitration Rules, which allow an arbitrator to rule on his own jurisdiction, "clearly and unmistakably shows the parties' intent to delegate the issue of determining arbitrability to an arbitrator"). In this

regard, we note that Wolverine itself submitted the issue of arbitrability to the arbitrator in this dispute.

Based on the foregoing, we conclude that the arbitrator had the authority to decide the arbitrability of the dispute. We sustain Rio Grande's second issue.

## VI. VACATING THE AWARD

By its third issue, Rio Grande contends that the trial court erred in vacating the arbitration award. The FAA governs the vacatur and confirmation of the arbitration award in this case. *Chestnut Energy Partners*, 300 S.W.3d at 399; *Roehrs v. FSI Holdings, Inc.*, 246 S.W.3d 796, 805-11 (Tex. App.–Dallas 2008, pet. denied). We review de novo a trial court's decision to confirm or vacate an arbitration award under the FAA. *Chestnut Energy Partners*, 300 S.W.3d at 397; *Statewide Remodeling, Inc. v. Williams*, 244 S.W.3d 564, 567 (Tex. App.–Dallas 2008, no pet.); *Myer v. Americo Life, Inc.*, 232 S.W.3d 401, 407 (Tex. App.–Dallas 2007, no pet.); *see also In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (applying de novo standard to review the trial court's resolution of whether an arbitration provision under the FAA was enforceable). In applying this standard of review, we review the entire record. *Chestnut Energy Partners*, 300 S.W.3d at 397; *Statewide Remodeling, Inc.*, 244 S.W.3d at 567. In a de novo review, the trial court's decision is given absolutely no deference. *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998). All reasonable presumptions are indulged in favor of the award, and none against it. *Chestnut Energy Partners*, 300 S.W.3d at 397; *Statewide Remodeling, Inc.*, 244 S.W.3d at 568. An arbitration award is presumed valid and entitled to great deference. *Myer*, 232 S.W.3d at 407-08. Because judicial review of an arbitration award adds expense and

16

delay that diminishes the benefit of arbitration as an efficient, economical system for resolving disputes, our review of the arbitration award is "extraordinarily narrow." *Id.* at 408.

When a non-prevailing party seeks to vacate an arbitration award, it bears the burden in the trial court of bringing forth a complete record that establishes its basis for vacating the award. *Chestnut Energy Partners*, 300 S.W.3d at 399; *Statewide Remodeling, Inc.*, 244 S.W.3d at 568. "When there is no transcript of the arbitration hearing, the appellate court will presume the evidence was adequate to support the award." *Chestnut Energy Partners*, 300 S.W.3d at 400; *Statewide Remodeling, Inc.*, 244 S.W.3d at 568.

Under the FAA, the grounds for vacating, modifying, or correcting an arbitration award are limited to those specified in sections 10 and 11. *See* 9 U.S.C. §§ 9-11; *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008); *see also Petroleum Analyzer Co., LP v. Olstowski*, No. 01-09-00076-CV, 2010 Tex. App. LEXIS 1558, at *28 (Tex. App.–Houston [1st Dist.] Mar. 4, 2010, no pet.) (mem. op.).[3] Section 10(a) permits a court to vacate an arbitration award:

(1)    where the award was procured by corruption, fraud, or undue means;

(2)    where there was evident partiality or corruption in the arbitrators, or either of them;

(3)    where the arbitrators were guilty of misconduct in refusing to postpone

---

[3] Section 11 of the FAA allows an arbitration award to be modified in the event that: (1) the award has an evident material miscalculation or material mistake; or (2) the form of the award is imperfect in a way that does not affect the merits. *See* 9 U.S.C. § 11. These grounds speak to errors that are "clerical in nature rather than legal." *See Fogal v. Stature Constr., Inc.*, 294 S.W.3d 708, 721 (Tex. App.–Houston [1st Dist.] 2009, pet. denied) (quoting *Quinn v. NAFTA Traders, Inc.*, 257 S.W.3d 795, 798 (Tex. App.–Dallas 2008, pet. granted)).

the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4)     where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*See* 9 U.S.C.A. § 10; *see also GE Commer. Distrib. Fin. Corp. v. Momentum Transp. Servs., L.L.C.*, No. 09-09-00162-CV, 2010 Tex. App. LEXIS 2486, at \*\*10-11 (Tex. App.–Beaumont Apr. 8, 2010, no pet.) (mem. op.).

By its amended motion to vacate, Wolverine argued that the arbitration award should be vacated, or alternatively, modified, because:  (1) the parties did not agree contractually to arbitrate their differences; and (2) Rio Grande failed to obtain a court order compelling Wolverine to arbitrate after Wolverine had provided Rio Grande with advance, written notice of its objection to going forward with the arbitration initiated by Rio Grande. Wolverine does not expressly advance any of the four statutory grounds listed in section 10 of the FAA as grounds for vacatur of the arbitration award, although Wolverine does argue that "by ignoring the Plaintiff's continuing objection to arbitration, the arbitrator exceeded his powers."  We have already addressed Wolverine's arguments in other contexts in this opinion, and need not address them further.  *See* TEX. R. APP. P. 47.1, 47.4.  Applying a de novo review, we conclude that the trial court erred in vacating the arbitration award.  Accordingly, we sustain Rio Grande's final issue.

## VII. CONCLUSION

Because Rio Grande and Wolverine were parties to a valid arbitration agreement and the claims that were resolved by the arbitrator were within the scope of the parties' arbitration agreement, the claims were properly arbitrated.  We hold that the trial court

18

erred in granting Wolverine's motion to vacate the arbitration award. We reverse the order vacating the arbitration award, remand the cause to the trial court, and instruct the trial court to enter judgment confirming the final arbitration award.


ROSE VELA
Justice

Delivered and filed the 6th
day of July, 2010.